The Chancellor.
The bill is brought to foreclose two mortgages, held by the complainants, which cover what is known by the name of the “ Iforest Grove House,” with about forty acres of land, on Schooley’s mountain. The validity of the mortgages is not disputed. The questions raised are in reference to the validity of the lien claims set up by some of the defendants, and as to the priorities of the respective encumbrances.
*414 Case and Gulick set up a mechanic’s lien, of $301, upon the property. It is objected tó this lien, that it appears, upon the face of it, to be of a character not recognised by the statute. In the claim filed with the clerk of the county, it is described, as “ being for doors, blinds, lumber, &c., and materials furnished to and for David C. Noe, at his request, by the said Case and Gulick, the said claimants, in the repairing, altering, and finishing of the said main buildings and wings herein before described.”
In the bill of particulars, the charge is, “ to panel doors, casings, and base, as by special agreement to be used in constructing and finishing 'Forest Grove House,’ at Schooley’s mountain, $115.00
To 248 feet of blinds, 186.00
Making the said sum of ■ $301.00”
Then follows the affidavit required by the statute, in which it is alleged, “ that the facts and statements set forth in the foregoing bill of particulars are true, and that the amount therein set forth, as due said claimants, is for casings, blinds, &c., and materials furnished in the repairing, altering, erecting, and finishing of said buildings in said claim described.”
The first section of the "mechanic’s lien” act (Nix. Dig. 487) makes every building, thereafter erected, liable for the payment of any debt contracted for labor performed, or materials furnished, for the erection and construction thereof; and declares such debt to be a lien on the building and land whereon it stands. The fifth section of the act declares, that any addition erected to a former building shall be considered a building for the purposes of the act; but that no building shall be subject to the provisions of this act, for any debt contracted for repairs done thereto, or alterations made therein.
The affidavit of the claimants, and which certainly is the best evidence as 'to the purposes for which the materials were furnished, states that they were for repairing, *415 altering, erecting, and finishing the building. As the act expressly declares that no building shall be subject to the provisions of the act for any debt contracted for repairs done thereto, or alterations made therein, I cannot see how the court can recognise this as a lien affecting other encumbrances, where the record, constituting the evidence of the lien, shows that the claim is not embraced within the provisions of the act. It was argued, that the word erecting, in the affidavit, makes the claim a lien under the act. But what are you to do with the words repairing and altering? You cannot reject them as surplus-age, as was insisted by counsel on the argument, because, the claimants, having sworn that the materials furnished were used for repairing, altering, erecting, and finishing, a part must have been used for purposes which the act declares shall not create a lien. An individual, who has furnished some lumber for erecting, and some for repairs and alterations in a building, cannot include in his claim all the materials he has furnished for these different purposes, and then, because he can conscientiously swear that the materials were furnished for repairs, alterations, and erection, obtain a lien for the materials and for repairs and alterations. It is said the claimants ought not to lose their lien on account of a mere technical difficulty in their mode of recording it. The difficulty is not a mere technical one. The act expressly declares that they shall acquire no lien for materials furnished for mere repairs and alterations. They file their answer, and present their claim as it is recorded. They do not allege that there was any mistake in the manner of stating their claim; nor do they set forth, in their answer, that the materials were in fact furnished for any different purposes than as alleged by them in their claim tiled in the office of the clerk of the county. They do not set up any special ground of relief in the case, alleging what amount of the debt contracted was for materials used in erecting the buildings, and claiming that their lien should be established for that *416 much. If the claim is recognised, it must be for its fall amount of $301, a part of which was undoubtedly furnished for mere repairs and alterations, because the claimants have so sworn; and thus these defendants will have acquired a lien upon a building, in direct opposition to the letter and meaning of the statute. I feel constrained to the conclusion that this claim cannot be recognised as a valid lien, or encumbrance, upon the mortgaged premises.
The claim of William G. Gardner is subject to the same objection as that of Case and Gulick. The claim, as set out on the record, states “that the said David C. Noe contracted the debt of one hundred and eighty-three dollars and thirty-six cents, being the amount for which this lien is claimed as aforesaid, the same being for tinning roof, lead pipes, pumps, copper tube, and work and labor and materials, furnished to and for the said David C. Noe, at his request, by this claimant, in the repairing, alteration, and finishing of the said buildings,” &c. The affidavit declares the labor done and materials furnished to have been “ in the repairing, altering, erecting, and finishing of said buildings.” This claim is not recognised, by the statute, as a lien upon the mortgaged premises. In looking at the bills of particulars filed with the claims of Case and Gulick, and also of Gardner, I am satisfied that the labor and materials they furnished were not.the proper subjects of lien. They were furnished in the alteration of the house. The house had been finished two years previous, and what was done by Noe formed no part of the original design of the building.
The claim of Rusling, Bell and Clawson is specified with great particularity, and is not subject to any exception as to its form or for non-compliance with the provisions of the act. The claim is for $540.56, being a debt contracted for materials furnished in the erection and construction of a porch, or piazza, about seventy feet long, and ten feet wide, added to the east end of said main *417 building, and annexed to the northeast wing, a porch, or piazza, added to the west end of said main building, being about ten feet wide, and about fifty-five feet long, covered or roofed with tin ; also a bar-room, added to the west end of said main building, and annexed to the westerly wing, being ten feet wide, and twenty feet long ; also a kitchen, forty feet long, and thirty feet wide, added to the northwest end of the northwesterly wing; also two pair of folding-doors, placed between the parlors and dining-rooms, on the first floor of said main building.
The first objection to this claim is, that a piazza is not an “ addition," within the contemplation of the fifth section of the act (Nix Dig. 487). The fifth section is as follows : “ Any addition erected to a former building, and any fixed machinery or gearing, or other fixtures for manufacturing purposes, shall be considered a building for the purposes of this act.” It is very evident that the legislature meant, by the word “addition," to embrace something which in common parlance would not be designated as a building, or the phraseology would not have been used, that such addition should be considered a building for the purposes of this act. It was contended by counsel, in opposition to this claim, that by “ any addition erected to a former building,” was meant adding a building to a former building. If so, there was no propriety in the act’s declaring that such addition should be considered a building. It would, to all intents and purposes, be a building, and therefore there would be no propriety in the legislature’s declaring it should be considered a building. Besides, if the fifth section of the act meant nothing more than a building added to a former building, that object was embraced in the first section of the act, and therefore the fifth section, except so far as it included machinery, &e., for manufacturing purposes, was quite unnecessary and superfluous.
Another objection to the claim of Rusling, Bell and Clawson is, that it embraces the materials found for two *418 pair of folding-doors. It is contended that this is an alteration merely, within the meaning of the fifth section of the act. I do not see how there can be a doubt as to this. If, in the original erection of the house, these folding-doors had been made, of course the materials for constructing them would have been properly included as part of the materials furnished in the erection of the building. But these buildings had been erected and occupied for two years, or more. Mr. Noe purchased them for the purpose of adapting and appropriating them to the use of a public boarding house, and, as a matter of convenience, had the rooms in the house connected by folding-doors. This was certainly but an alteration, and cannot be considered, with any propriety, a building, or an addition erected to a former building, within the meaning of the act.
But then, as a third objection to this claim, it is insisted, that if the materials for the piazzas were not properly included, it destroys the whole claim, for it makes it obnoxious to the same objection which excludes the claims of Case and Gulick and of William G. Gardner from the benefit of the act — But there is this difference. The claims of Case and Gulick and Gardner were declared to be for work done and materials furnished in the repairing, altering, and finishing the buildings. The claim of Bus-ling, Bell and Clawson designates the appropriation of the materials to the particular purposes to which they were applied. In the one case, you may ascertain the quantity and value of the material appropriated to the legitimate, and that to the illegitimate object; in the other, they are so blended as to be inseparable.
It is further objected to this claim, that it is filed embracing all the buildings, as well the piazzas, kitchen, and bar-room as the buildings to which these additions were attached. The counsel for the claimants contend that such is the true construction of the act, and the claim properly *419 embraces all the buildings, and is a claim upon them. But I cannot yield assent to this construction.
By the eleventh section of the act, under a special fieri facias, the sheriff is to advertise, sell, and convey said building and lot; and the act declares that the deed given by the sheriff shall convey to the purchaser the said building free from any former encumbrance on the land. If the construction contended for is correct, then the sheriff conveys to the purchaser not only the building which has been erected by the labor and materials the claimants have furnished, but also other buildings; and besides that, supplants a former encumbrancer — the conveyance, by the sheriff being made, according to the act, free from any former encumbrance on the land. Thus it deprives a former encumbrancer not only of his priority of lien on the buildings which the mechanic who sets up his claim has erected, but of his priority, also, in the original buildings in the erection of which the mechanic has furnished neither labor or materials. When this same section speaks of the “ commencement of the building,” it certainly does not refer to the commencement of the original building to which the addition is attached, but to the building which has been erected by the labor and materials for which that building remains as a security. The act declares, that every building shall be liable for the payment of any debt contracted, &c., for the erection and construction thereof, and that any addition erected to a former building shall be considered a building for the purposes of this act. The act draws a distinction between the original building and the addition. Any addition erected to a former building is then liable for the payment of any debt contracted in its erection; but the act does not declare that the building to which the addition is erected shall be liable for the payment of any debt contracted for the erection and construction of such addition. The one construction of the act permits the claimant to supplant a former encumbrancer by implication, the other leaves the prior encumbrancer unmolest *420 ed in his rights. I think, when we come to adjust the equities of these parties, and subject the property to a sale, for the purpose of satisfying these various and conflicting encumbrances, that the propriety of this construction will be made manifest. The property must he sold. The complainant holds the first mortgage. In the sale of the property, two piazzas and the kitchen are sold. On these, the act in question gives to the claimants the first lien. They must be valued according to some proper scale or mode of estimation, and their value, thus ascertained, must be deducted from the fund, and paid to the claimant. But would it be proper to permit him to encroach upon the rights of a prior mortgagee, by deducting from the fund not only the value of the buildings, which have been erected by his labor and materials, but the value of other buildings which he had no agency in creating ? But although, according to the view I have taken, the claim filed embraces more than the claimants are entitled to, I do not consider that this circumstance affects the validity of the claim, as to the extent it is recognised by the statute. The claim distinctly shows what buildings were erected by the labor and materials of the claimant; and because he may be mistaken, as to the law, in claiming a lien on more property than the act recognises, such a mistake should not operate to his prejudice. It was not of a character to injure or mislead any .one; and no one has just ground of complaint on account of this mere irregularity.
The only objection made to Ichabod Searing's claim is, ■ that the bill of particulars is not verified by the oath of the claimant, as required by the statute. I think the “ act” is substantially complied with. The statement of the claim is very full, and it refers to the bill of particulars as correct. Then follows the bill of particulars. The affidavit does not state, in so many words, that the bill of . particulars is true. But the hill of particulars, being referred to in the statement of the claim as being annexed *421 to the statement, and the statement being verified as true, and as exhibiting the true nature of the claimant’s demand, the reference to the statement in the affidavit is a substantial compliance with the act.
As to John B. Taylor’s lien. This lien is not good, so fár as the labor was bestowed and the materials were furnished for the alterations in the upper story of one of the wings. The converting of a garret into bed-rooms, for the purpose of accommodating the house to the purposes for which Noe designed to appropriate it, was an alteration within the meaning of the statute; and the building is not subject to the provisions of the act for a debt contracted for such alteration. The lien is good so far as it relates to the piazzas, office, and kitchen, but not to the folding-doors or garret.
Jesse Hoffman’s claim is good, as a lien on the piazzas, office, kitchen, and ice-house, but not for the mason work to the inside of the third story of the easterly wing, or for the lathing and plastering the cellar story of the main building.
Charles W. Backman’s claim is good, as a lien upon the piazzas, office, and kitchen, but not on folding-doors, or for work on the third story of the easterly wing of the main building.
It remains to determine the mode by which these several encumbrances shall be satisfied out of the premises.
The mortgages mentioned in the bill were all recorded prior to the time when the defendants’ liens attached to the property, with the exception of Ichabod Searing’s lien, which has priority over the complainant’s third mortgage. The mortgages, then, are prior encumbrances, and are to be first paid out of the fund produced by the laud. The mechanics’ liens are the first encumbrances on the additions, to wit, the piazzas, office, kitchen, and ice-house, and are entitled to be first paid out of the fund produced by the sale of these buildings. The fund produced by the sale of the orginal buildings must be appro *422 priated to the payment of the mortgages and judgments. It is not subject to the payment of the liens; because if it is subject at all to the payment of the liens, the liens have priority over the mortgages, as appears from the eleventh section of the act, which I do not believe was intended. The property has been sold by consent of all parties, and the fund is in court.
There must be a reference to a master, with directions to ascertain, as near as practicable—
First. What amount of this fund represents the value of the land, independent of the buildings.
Second. What amount represents the value of the additions, to wit, the piazzas, kitchen, office, and ice-house. In ascertaining this amount, it would be just, I think, for the master to ascertain their original costs, respectively, which can be readily done by means of the bills of particulars furnished with the record of the liens in this cause, and then make a proper deduction for depreciation to the time of the sale.
Third. What amount of the fund represents the value of the original buildings to which the additions -were attached.
Out of the first fund, thus ascertained, the mortgages mentioned in the bill must be paid, except the complainant’s third mortgage. Ichabod Searing’s lien is prior to the complainant’s third mortgage on that fund, provided the lien is not paid out of the second fund.
Out of the second fund, the lien claimants are to be first paid. If there is a deficiency, then Searing must resort to the first fund, and be first paid, if any of that fund is left; then the complainant’s third mortgage must be paid out of the fund; then the other mechanic liens.
As to the third fund, the mortgage and judgment creditors apply that fund according to the respective priority of their encumbrances.
. If there are any buildings on the land besides those as before referred to as original buildings and as additions, *423 they must be valued separately, because the mechanics’ liens do not cover them ; or if convenient, they may be valued with the original buildings, and carried into the third fund.